**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

IN RE:

RANDY P. COLEY                                     CASE NO. 18-02154-5-JNC
                                                                  CHAPTER 11

      DEBTOR

DIRECTV, LLC
      Plaintiff

v.                                                                          AP No.: 18-00118-5-JNC

RANDY P. COLEY
      Defendant

**Defendant's Response and Opposition to Plaintiff's Motion for Summary Judgment**

NOW COMES defendant Randy P. Coley, by and through undersigned counsel, pursuant to E.D.N.C. Local Rules 7007-1(b) and 9014-1, and respectfully requests the Court deny summary judgment of the Plaintiff in its causes of action against the Defendant. In support of this response, Defendant submits the following:

**I. INTRODUCTION**

*Colliers on Bankruptcy, Sixteenth Edition*, states that "In determining whether a particular debt falls within one of the exceptions of section 523, the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor. Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy system." ¶523.05. Significantly, sections 523(a)(2)(A), 523(a)(4), and 523(a)(6) under which the Plaintiff seeks to have its claim excepted from the Defendant's discharge each require a showing that the Defendant incurred his debt with a particular intention or ill will in mind. The Plaintiff's Motion for Summary Judgment, however, relies exclusively on a pre-bankruptcy judgment that fails to sufficiently address Mr. Coley's intent in coming to be

indebted to DIRECTV. Rule 56 of the Federal Rules of Civil Procedure allows for the granting of a Motion for Summary Judgment only when "the movant shows that there is no genuine dispute as to any material fact." Because Mr. Coley's mental intent remains in dispute, the Plaintiff's motion should be denied.

From 2011 to 2018, the parties to this action were embroiled in lengthy litigation in the Western District of Virginia. The pre-judgment portion of that litigation concluded in January 2014 with the entering of a judgment on the pleadings in favor of DIRECTV in which Mr. Coley was found to be in violation of 47 U.S.C. § 605(a). Following the entry of that judgment, the parties have engaged in a series of post-judgment execution disputes, of which this bankruptcy case stands as the culmination.

DIRECTV's Motion for Summary Judgment and the accompanying Memorandum lean heavily on the district court record, particularly depositions taken of Mr. Coley and various written orders of the court, to argue that Mr. Coley is collaterally estopped from presenting evidence in his defense at a trial in this adversary proceeding. This response to the Plaintiff's Motion and Memorandum shows how that record contains both too much and not enough to constitute a sufficient basis for granting DIRECTV's motion: too much, because it attempts to shield from re-litigation findings of fact that were inessential to the underlying judgment; not enough, because the judgment failed to adequately consider the element of intent necessary for each of the section 523 actions.

## II. FACTS

In 1999, Mr. Coley's company, ("ECC"), was hired by Massanutten Resort to install and service a large private cable system for the Virginia mountain resort. That initial installation was a massive undertaking that few companies in the nation would have been capable of completing at that time. Following the installation, ECC was tasked with the continued maintenance and service of the system – something that required at a minimum two fulltime on-site ECC employees. After installing that cable system, ECC initiated the first 168 units receiving programming from DIRECTV. After those initial units, it was the responsibility of DIRECTV's on-site agent, Sky Cable, LLC, to initiate new accounts and communicate appropriately with

DIRECTV regarding service and billing. It was Mr. Coley's company's job to install and service the private cable system.

The first 168 units activated by DIRECTV were located at the Massanutten Resort but were owned by an entity called "Mountainside Villas." ECC agreed to allow Mountainside Villas pay a single invoice to it each month that consisted of a payment for the installation work that ECC had performed for it as well as the DIRECTV bill for those 168 units. Debtor remitted to DIRECTV the portion of Mountainside Villas' payment attributable to DIRECTV's subscription service and applied the remaining amount to its own invoice.

With the exception of Mountainside Villas, it was the responsibility of the various owners within the resort to do direct business with DIRECTV. ECC billed the homeowners individually for its work in building and maintaining the cable system, not for DIRECTV services. Debtor's company was hired to build and maintain the infrastructure of the resort's cable system. As more units were constructed, the maintenance cost billed to the resort increased accordingly. Any payments made by the resort to the Debtor's company were in payment for the construction and maintenance of the cable infrastructure. The per unit monthly maintenance fee for the 2500 units was approximately $12.00.

Undoubtedly, DIRECTV failed to receive payments from subscribers at the resort. However, neither Mr. Coley nor his company caused or benefited from DIRECTV's loss. In fact, on several occasions, Mr. Coley contacted DIRECTV to alert them to the existence of non-paying units, but he was ignored. With that understanding, certain statements made by Mr. Coley in the district court litigation and quoted by the Plaintiff in its Memorandum, can be considered in a different light: Mr. Coley could be aware of the failure of DIRECTV to properly account for the users of its service, receive monthly payments of $12 per unit from resort residences, and yet not possess the active intent necessary for findings under section 523.

Mr. Coley's company received money over a twelve year period of time that it maintains was related to the ongoing servicing of the cable system. The fact that residences of the resort were receiving free DIRECTV programming was neither caused by Mr. Coley's company nor did Mr. Coley's company benefit from it. The district court granted DIRECTV's summary judgment motion in 2013 without Mr. Coley testifying in court.

### III. SUMMARY JUDGMENT

Because a number of "genuine issues of material fact" are stridently disputed between the parties, the Plaintiff's motion for summary judgment would seem to stand or fall entirely on the doctrine of collateral estoppel. Prior judgments are given a preclusive effective when the following four elements are satisfied: "(1) the issue sought to be precluded was the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a valid and final judgment; and (4) the determination was essential to the prior judgment." *Combs v. Richardson*, 838 F.2d 112, 115. (4th Cir. 1988).

The district court litigation was not based on larceny, fraud, conversion, misrepresentation, or any similar cause of action found in Virginia state law or the common law that would bear a close familial relation to the relevant portions of Section 523. Instead the complaint was based entirely on 47 U.S.C. § 605(a), a rather bloodless, dispassionate, stretch of the Communications Act that mentions nowhere in it the requisite wrong intent or malice that are so central to the Section 523 actions brought in this case.

47 U.S.C. § 605(a) reads in full:

> Except as authorized by chapter 119, title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such

> communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

If the pre-bankruptcy litigation was intended to assign blame for the undisputed fact that DIRECTV failed to receive revenue to which it was entitled, they picked the wrong federal statute to achieve that end. Instead, DIRECTV's portrayal of Mr. Coley throughout the litigation as a schemer and a fraud, and Mr. Coley's counter-portrayal of DIRECTV as a vindictive behemoth looking for the nearest bystander at Massanutten on which to affix blame for their own costly incompetence, while contributing mightily to the rancor and cost of litigation, was a completely superfluous distraction from the simple language of 47 U.S.C. § 605. Because Mr. Coley is collaterally estopped from arguing in this court only those issues that were essential to the underlying judgment, identifying what was, and was not, superfluous to the district court judgment is of supreme importance in this adversary proceeding. In short, any finding, probing, or speculation by the district court regarding Mr. Coley's intent was inessential to the judgment and Mr. Coley should not be estopped from presenting evidence at trial in aid of his defense in this adversary proceeding.

Many underlying facts are not in dispute at all, while others can appropriately be identified as having been the subject of actual litigation necessary to the underlying judgment, but the fundamental core of the non-dischargeability claims brought by the Plaintiff in this adversary proceeding involves an examination of intent that was entirely irrelevant to the district court. To nearly every significant finding of fact made by the district court, the additional question of intent remains to be asked by this court. That question has never yet been asked, let alone answered. Instead, DIRECTV has taken the record surrounding its pre-bankruptcy judgment and trawled it for terms such as "scheme" and "fraud" and "deception" that it now claims should carry the same collateral estoppel force as the basic facts that were actually necessary for the judgment.

The Plaintiff's memo accompanying its motion for summary judgment states that "Coley is collaterally estopped from seeking to re-litigate the relevant issues that have already been

decided by the district court." True enough, but it is both true that some issues were litigated that weren't relevant to the underlying judgment (and that therefore are not precluded from being re-litigated) and other issues that are very relevant to this adversary proceeding that were never litigated at all. Quite simply it is not true that "the findings of fact and conclusions of law from the district court demonstrate that Coley committed larceny, that his actions were deliberate and intentional and done with willful and malicious intent to injure DIRECTV and its property, and that the judgment debt is based on money, property or services obtained by Coley through false pretenses, false representation, or actual fraud." The district court may or may not have made those findings (that is, itself, a matter profound dispute), but it is also beside the point: only those findings of fact that were essential to the district court judgment can be carried over into this action. For example, if the district court judgment had contained a finding that Mr. Coley owed a domestic support obligation in a certain amount, a claimant in his bankruptcy case could not use that finding to prevail in a 523(a)(5) action. There are many reasons for this rule, not least of which is the fact that a defendant in an earlier action may not care to expend resources defending himself against particular accusations that are seen as irrelevant to the action at bar.

DIRECTV, well knowing that without proof of wrongful intent it cannot prevail on its Section 523 actions, places great weight on the district court's post-judgment ruling concerning damages. The section of 47 U.S.C. 605 pertaining to this is shown here, in full:

> e) PENALTIES; CIVIL ACTIONS; REMEDIES; ATTORNEY'S FEES AND COSTS; COMPUTATION OF DAMAGES; REGULATION BY STATE AND LOCAL AUTHORITIES
>
> (1) Any person who willfully violates subsection (a) shall be fined not more than $2,000 or imprisoned for not more than 6 months, or both.
>
> (2) Any person who violates subsection (a) willfully and for purposes of direct or indirect commercial advantage or private financial gain shall be fined not more than $50,000 or imprisoned for not more than 2 years, or both, for the first such conviction and shall be fined not more than $100,000 or imprisoned for not more than 5 years, or both, for any subsequent conviction.
>
> (3)
>> (A) Any person aggrieved by any violation of subsection (a) or paragraph (4) of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction.
>>
>> (B) The court—

(i) may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a);

(ii) may award damages as described in subparagraph (C); and

(iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

(C)

(i) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following sub-clauses;

(I) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or

(II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

(ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a).

(iii) In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250.

  Here, for the first and only time, is Mr. Coley's willfulness and intent properly considered, as Section 605(e) lays out a menu of possible damage awards available to the aggrieved (including criminal prosecution). While Mr. Coley falls short of the leniency allowed certain violators under 605(e)(C)(iii), the district court conspicuously declines to assign damages under those subsections reserved for those who violate 605(a) willfully for financial gain (605(e)(C)(ii)). Significantly, the subsection under which the district court does award damages (605(e)(C)(i)(II) is silent on the question of willfulness, as its ruling denying the safe harbor exception under 605(e)(C)(iii) merely states that Mr. Coley was not unaware of the violations. There is a great difference between a willful violation for financial gain and being aware of a violation for no financial gain. Lastly, the range of possible per-violation damage award under 605(e)(C)(i)(II) is between $1,000 and $10,000. The district court chose the minimum amount of per-violation award of $1,000. Where a consideration of Mr. Coley's intent was most at issue, the district court's ruling was most favorable.

  The findings of fact that are essential to the district court judgment under 47 U.S.C. 605 are not inconsistent with the facts as presented by Mr. Coley that fall short of the requirements under sections 523(a)(2)(A), 523(a)(4), and 523(a)(6).

  **WHEREFORE,** Defendant respectfully requests that this Court deny the summary judgment pled for by the Plaintiff and find the judgment to be dischargeable, and grant such other relief that this Court deems just and proper.

| | |
|---|---|
| Dated: July 23, 2019 | SASSER LAW FIRM |
| | /s/Travis Sasser |
| | Travis Sasser |
| | 2000 Regency Parkway, Suite 230 |
| | Cary, N.C. 27518 |
| | Tel: 919.319.7400 |
| | Fax: 919.657.7400 |
| | travis@sasserbankruptcy.com |

**CERTIFICATE OF SERVICE**

      This is to certify that a copy of the foregoing Response was served on the entities listed below at their last known address with sufficient postage thereon, or, if such interested party is an electronic filing user, by serving such interested party, electronic transmission, pursuant to Local Rule 5005-4(9)(b).

    Kevin Sink
    Nichols & Crampton
    PO Box 18237
    Raleigh, NC 27619

I certify under penalty of perjury that the foregoing is true and correct.

Dated: July 23, 2019                    SASSER LAW FIRM

                                              /s/ Travis Sasser
                                              Travis Sasser
                                              2000 Regency Parkway, Suite 230
                                              Cary, N.C. 27518
                                              Tel: 919.319.7400
                                              Fax: 919.657.7400
                                              Philip@sasserbankruptcy.com