UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

RANDY P. COLEY                                CASE NO. 18-02154-5-JNC
                                              CHAPTER 11

   DEBTOR

DIRECTV, LLC
           Plaintiff

v.                                            AP No.: 18-00118-5-JNC

RANDY P. COLEY
           Defendant

## Supplement to Defendant's Response and Opposition to Plaintiff's Motion for Summary Judgment

NOW COMES defendant Randy P. Coley, by and through undersigned counsel, pursuant to E.D.N.C. Local Rules 7007-1(b) and 9014-1, and supplements his response filed on July 23, 2019 (Docket entry 21) with the attached Exhibit A.

Dated: August 9, 2019                         SASSER LAW FIRM

                                              /s/Travis Sasser
                                              Travis Sasser
                                              2000 Regency Parkway, Suite 230
                                              Cary, N.C. 27518
                                              Tel: 919.319.7400
                                              Fax: 919.657.7400
                                              travis@sasserbankruptcy.com



EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

RANDY P. COLEY                                    CASE NO. 18-02154-5-JNC
                                                  CHAPTER 11

    DEBTOR

DIRECTV, LLC
    Plaintiff

v.                                                AP No.: 18-00118-5-JNC

RANDY P. COLEY
    Defendant

## DECLARATION OF RANDY P. COLEY IN SUPPORT OF RESPONSE TO DIRECTV'S MOTION FOR SUMMARY JUDGMENT

I, Randy P. Coley, declare as follows:

1. In 1999, my company, ("ECC"), was hired by Massanutten Resort to install and service a large private cable system for the Virginia mountain resort.

2. That initial installation was a massive undertaking that few companies in the nation would have been capable of completing at that time.

3. Following the installation, ECC was tasked with the continued maintenance and service of the system – something that required at a minimum two fulltime on-site ECC employees.

4. After installing that cable system, ECC initiated the first 168 units receiving programming from DIRECTV.

5. After those initial units, it was the responsibility of DIRECTV's on-site agent, Sky Cable, LLC, to initiate new accounts and communicate appropriately with DIRECTV regarding service and billing. It was my company's job to install and service the private cable

system. The first 168 units activated by DIRECTV were located at the Massanutten Resort but were owned by an entity called "Mountainside Villas."

6. ECC agreed to allow Mountainside Villas pay a single invoice to it each month that consisted of a payment for the installation work that ECC had performed for it as well as the DIRECTV bill for those 168 units.

7. My company remitted to DIRECTV the portion of Mountainside Villas' payment attributable to DIRECTV's subscription service and applied the remaining amount to ECC's own invoice.

8. With the exception of Mountainside Villas, it was the responsibility of the various owners within the resort to do direct business with DIRECTV. ECC billed the homeowners individually for its work in building and maintaining the cable system, not for DIRECTV services.

9. My company was hired to build and maintain the infrastructure of the resort's cable system.

10. As more units were constructed, the maintenance cost billed to the resort increased accordingly.

11. Any payments made by the resort to my company were in payment for the construction and maintenance of the cable infrastructure.

12. The per unit monthly maintenance fee for the 2500 units was approximately $12.00, which would have totaled $360,000 per year by the end of the build-out.

13. I do not dispute that DIRECTV failed to receive payments from subscribers at the resort.

14. However, neither I nor my company intended, caused, or benefited from DIRECTV's loss. DIRECTV's failure to properly bill and receive payments was the fault of others.

15. In fact, on several occasions, I personally contacted DIRECTV to alert them to the existence of non-paying units, but was ignored.

16. With that understanding, certain statements I made in the district court litigation and quoted by the Plaintiff in its Memorandum, should be considered in a different light: I never intended to harm DIRECTV. To the contrary, I repeatedly advised DIRECTV of the relevant facts and always paid the invoices received from DIRECTV. These facts have never been

addressed or considered by any court, and to my knowledge, DIRECTV does not even dispute those facts.

17. My company received money over a twelve year period of time that was related to the ongoing servicing of the cable system.

18. The fact that residences of the resort were receiving free DIRECTV programming was not caused by my company and my company did not benefit from it.

19. The district court granted DIRECTV's summary judgment motion in 2013 without me testifying in court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of August, 2019, in Cary, North Carolina.

_____
Randy P. Coley

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Supplement was served on the entities listed below at their last known address with sufficient postage thereon, or, if such interested party is an electronic filing user, by serving such interested party, electronic transmission, pursuant to Local Rule 5005-4(9)(b).

Kevin Sink
Nichols & Crampton
PO Box 18237
Raleigh, NC 27619

I certify under penalty of perjury that the foregoing is true and correct.

Dated: August 9, 2019

SASSER LAW FIRM

/s/ Travis Sasser
Travis Sasser
2000 Regency Parkway, Suite 230
Cary, N.C. 27518
Tel: 919.319.7400
Fax: 919.657.7400
Philip@sasserbankruptcy.com