**SO ORDERED.**

**SIGNED this 24 day of October, 2019.**

_Joseph N. Callaway_
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

In re:

**RANDY P. COLEY,**
      **Debtor**

**Case No. 18-02154-5-JNC**
**Chapter 7**

**DIRECTV, LLC, a California Limited**
**Liability Company,**
      **Plaintiff,**

**v.**

**RANDY P. COLEY,**
      **Defendant.**

**Adversary Proceeding No.**
**18-00118-5-JNC**

## ORDER AND MEMORANDUM OPINION
## ON MOTION FOR SUMMARY JUDGMENT

Pending before the court is the Motion for Summary Judgment (AP Dkt. 16; the "Motion") of plaintiff DIRECTV, LLC ("DIRECTV" or "Plaintiff") filed July 2, 2019. A response in opposition was filed by defendant, Randy P. Coley ("Defendant" or "Mr. Coley") on July 23, 2019 (AP Dkt. 21; the "Response").[1]  The hearing on the Motion and Response was

---

[1] References to docket entries in this adversary proceeding will be cited as "AP Dkt. __," and references to docket entries in the underlying bankruptcy case will be cited as "BR Dkt. __."

noticed for and conducted on August 22, 2019 in Raleigh, North Carolina.[2] Attorneys Kevin Sink and John Jamnback appeared on behalf of DIRECTV; attorney Phillip Sasser appeared on behalf of Mr. Coley. At the conclusion of the hearing, the court took the matter under advisement and the matter is now ripe for decision.

## JURISDICTION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151 and 1334 and is authorized to hear this case pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina. The primary matters raised in the adversary proceeding make it a core proceeding pursuant to 28 U.S.C. § 157(b), and the court has statutory authority to enter a final judgment as to those matters. In addition, the parties consented to this court entering final judgment on all matters raised in the adversary proceeding. *See* Pretrial Scheduling Order of February 6, 2018 (AP Dkt. 13). The court consequently has constitutional authority to enter final judgment in this adversary proceeding. *Wellness Int'l Network, Ltd., v Sharif*, __ U.S. __, 135 S. Ct. 1932, 1947 (2015).

## BACKGROUND

In this adversary proceeding, DIRECTV seeks a determination that an indebtedness reduced to judgment and owed to it by Mr. Coley is not subject to discharge in his bankruptcy case pursuant to 11 U.S.C. §§ 523(a)(4), (a)(6), and (a)(2)(A). These two parties have been in constant litigation since 2011, the controversy having ignited in the United State District Court for the Western District of Virginia the ("District Court"), *Sky Cable, LLC v. Coley*, Civil Action No. 5:11cv00048, United States District Judge Michael F. Urbankski presiding (the "Virginia Litigation"). That case culminated in the issuance of a judgment for DIRECTV against Mr.

---

[2] The Plaintiff's related Motion to Strike (AP Dkt. 27) and the Defendant's response (AP Dkt. 31) were heard at the same time. A separate order on the Motion to Strike is being entered simultaneously with this opinion.

Coley that is the subject of the dischargeability action here, along with the issuance of several related opinions and orders from the District Court. Facts established with finality in the Virginia Litigation are binding here under collateral estoppel and res judicata principles as discussed below.

Mr. Coley filed a petition for relief under chapter 11 of the Bankruptcy Code (BR Dkt. 1) on April 30, 2018, Case No. 18-02154-5-JNC (the "Bankruptcy Case"). Subsequently, the Bankruptcy Case was converted to chapter 7 (BR Dkt. 119) and a trustee was appointed (BR Dkt. 120). Mr. Coley is a defendant in and testified at length in the trial of an adversary proceeding entitled *Sparkman v. Coley et al*, Adv. Pro. No. 18-00121-5-JNC (the "Trustee AP") brought by the trustee and conducted before this court on July 30 and 31, 2019, in Greenville, North Carolina. A Memorandum Opinion (Trustee AP Dkt. 53) and Judgment (Trustee AP Dkt. 54) were entered in the Trustee AP, and certain findings contained in the Memorandum Opinion are applicable and binding here as well.

Therefore, the factual and legal determinations available for consideration in rendering this summary judgment motion originate from three sources: (1) submissions offered in this adversary proceeding; (2) findings established by the District Court in the Virginia Litigation; and (3) findings made in or subject to judicial notice from the Bankruptcy Case or the Trustee AP.[3]

### 1. Pre-Litigation Facts

Defendant Randy Coley, the debtor in this chapter 7 case, was the sole member and manager of East Coast Cablevision, LLC, a Delaware limited liability company ("ECC").

---

[3] The recited record facts, if not agreed in the pleadings of the parties, reflect the version of the facts construed in the light most favorable to Mr. Coley, the party defending summary judgment. Nothing herein shall be deemed a finding of fact for purposes beyond this order on the Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(g), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056.

Jamnback Decl., Ex. 1,[4] AP Dkt. 17-2, at 4.; Ex. 2, AP Dkt. 17-2 at 54. Mr. Coley and ECC built

and outfitted a cable television system at the Massanutten, Virginia, ski and golf resort in the late

1990's and early 2000's. They operated the system through 2011 when DIRECTV became aware

of the use of its signal as described below.[5] *Id.*, Ex. 11, AP Dkt. 17-2 at 113-114, ¶¶ 18-20. The

system was a pipeline designed to deliver television programming to consumer and business end-

users obtained from cable or satellite TV companies. *Id.,* Ex. 4, AP Dkt. 17-2 at 62-65; Ex. 5, AP

Dkt. 17-2 at 68, ¶ 5.3. In June 1999, ECC submitted an application to DIRECTV requesting

activation of a Satellite Master Antenna Television ("SMATV") system[6] for a 168-unit hotel

located at 289 Ranier Road in Massanutten. *See* Waite Decl., Exhibit 11 to Jamnback Decl., AP

Dkt. 17-2 at 111, 114, ¶¶ 8, 9, 10, 22; Ex. C, AP Dkt. 17-2 at 137-145; Jamnback Decl., Ex. 6,

Requests for Admission Nos. 1 and 2, AP Dkt. 17-2 at 72-72; Jamnback Decl., Ex. 1, AP Dkt.

17-2 at 5-6.  Mr. Coley signed the SMATV application as the "Authorized Installer" for "East

Coast Cable." Waite Decl., Ex. C, AP Dkt. 17-2 at 137-145; AP Dkt. 17-2 at 115, ¶ 25.  Shortly

thereafter, DIRECTV service was provided and accepted.[7]

---

[4] Exhibit 1 is the Deposition of Randy P. Coley of September 18, 2012, given in the Virginia Litigation. Thus, all references to Jamnback Decl., Ex. 1, reflect the sworn testimony of Mr. Coley.

[5] Massanutten is a ski and golf resort that includes hotels, condominiums and other facilities owned and/or operated by Great Eastern Resort Management, Inc. Located within it are a timeshare condominium complex at 4082 Peak Drive managed by the Mountainside Villas Owners Association, numerous independently owned condominiums and single-family homes managed by the Massanutten Properties Owners Association, private homes and several bars, restaurants, golf course clubhouses, health clubs, a ski area and a water park.  *See* Declaration of Keith N. Waite, Ex. 11 to Decl. of John H. Jamnback AP Dkt. 17-2 at 115, ¶ 27.

[6] DIRECTV provides satellite television programming to local single-end distributors such as a hotel or apartment complex through a SMATV system. In it, a satellite signal is received through one or more dishes onsite and decrypted via on-site specialized electronic equipment. The now-viewable signal is then distributed via cable wiring to individual units within the building(s). Monthly charges and service fees are determined by the number of individual units with access and the type of programming (premium channels, etc.). Waite Decl., AP Dkt. 17-2 at 112, ¶¶ 12-15.

[7] The SMATV Viewing Agreement prohibits any reselling, retransmitting, or rebroadcasting of DIRECTV programming outside the designated property. Waite Decl., AP Dkt. 17-2 at 113, ¶ 17.

From the start, access to DIRECTV service under the SMATV Viewing Agreement through ECC's ground network was agreed to be limited to the 168-unit hotel certified in the application. Mr. Coley never notified DIRECTV that far more than 168 units were receiving satellite programming service. Jamnback Decl., Ex. 1, AP Dkt. 17-2 at 30-31, 42.  No hotel exists at 289 Ranier Road or any other address in Massanutten owned or controlled by Mr. Coley; only a house formerly rented by ECC is situated there. *Id.* at 24-25; Ex. 11, AP Dkt. 17-2 at 116, ¶ 29; Ex. 6, AP Dkt. 17-2 at 76, Request for Admission No. 12. Instead, Mr. Coley and ECC downloaded and decrypted DIRECTV satellite programming signals using equipment located at property controlled by him at the resort that was then forwarded to 2,393 unauthorized consumer and business accounts (the user total of 2,561 as of 2011 minus the authorized 168 users) scattered throughout the Massanutten resort. Jamnback Decl. Ex. 1, AP Dkt. 17-2 at 27; Ex 6, AP Dkt. 17-2 at 81, Request for Admission No. 30.[8]

Mr. Coley admitted that he never updated or added paying viewers to the 168 permitted in the DIRECTV contract, stating in his deposition taken in the prior chapter 11 case of ECC[9] on December 15, 2011:

> **Q:** Since 2004, you have known that your billings from DIRECTV were understated, correct?
> **Coley:** Correct.
> **Q:** You've known since 2004 that you were being billed for 168 units -- or 164 units? How many units?
> **Coley:** Correct.
> **Q:** How many?
> **Coley:** I believe it's 168.

---

[8] As Massanutten resort expanded, ECC and Mr. Coley connected more buildings and viewing units to the single head end of DIRECTV receivers located on Killy Court, a site near 289 Ranier Road. Mr. Coley contended in the Virginia Litigation that until 2004, he obtained programing from WS-Net instead of DIRECTV to provide programming at Massanutten. WS-Net went out of business and was liquidated by late 2003, so for at least the period of 2004 to June 2011, the DIRECTV signal was used in the ECC system at Massanutten. Jamnback Decl., Ex. 1, AP Dkt. 17-2 at 27, 39-40.

[9] Case No. 11-08976-8-RDD, U.S. Bankruptcy Court, Eastern District of North Carolina.

**Q:** 168 units. And at the same time, you knew you were providing service to over 2,000 units?
**Coley:** Correct.

Jamnback Decl., Ex. 9, AP Dkt. 17-2 at 101.

By June 2011, the viewer unit count had grown to 2,561 known end-users, or 2,393 more than were authorized. From those consumers and businesses located in the Massanutten complex, ECC and Mr. Coley collected approximately $40,450 in subscription fees per month. Jamnback Decl., Ex. 6, AP Dkt. 17-2 at 79-81, Requests for Admissions Nos. 23, 24, 28, 29 and 30. From that amount, Mr. Coley and ECC paid DIRECTV only $2,078 each month, the amount based on the original 168-unit usage "hotel" count. *Id*. at 81, Requests for Admissions Nos. 31 and 32.[10]

### 2. The Virginia Litigation

The ECC and Coley Massanutten resort television signal rerouting scheme was discovered by DIRECTV in 2011. It filed a complaint against ECC and Mr. Coley in June 2011, in the District Court to initiate the Virginia Litigation.[11] In its July 11, 2013 order granting summary judgment on the issue of liability, the District Court found that:

> [F]rom at least 2004 through June 2011, the Coley defendants received DIRECTV programming signals authorized for 168 units at Mountainside Villas and distributed those signals to more than 2,500 properties the Coley defendants serviced at Massanutten Resort without proper authority from, or payment to, DIRECTV. Coley admits that he reported to DIRECTV that 168 subscriber units at Massanutten would have access to DIRECTV programming, that he never paid DIRECTV for more than the 168 subscriber units originally reported, and that as of May 2011 he was providing DIRECTV programming to 2,353 subscriber units managed by GERM, among other areas of Massanutten, using programming obtained from the Massanutten DIRECTV SMATV account. The subscriber unit count on the Massanutten SMATV account remained at 168 units from 1999 through June 2011.

---

[10] Annualized, by 2011 Coley was billing and presumably collecting approximately $485,400 on DIRECTV satellite programing downloaded and distributed to third parties by him while paying it about $25,000 per month. No explanation of the usage and whereabouts of the approximately $460,000 difference per year that the diversion generated while it remained in operation has been provided.
[11] *Sky Cable, LLC, et al., v. Randy Coley*, *et al.,* Civil Action No. 5:11cv00048, United States District Court for the Western District of Virginia.

*Sky Cable, LLC v. Coley*, No. 5:11cv00048, 2013 U.S. Dist. LEXIS 97129, at *66-67 (W.D. Va. July 11, 2013). Mr. Coley was specifically found to be personally liable.[12] The District Court also entered a permanent injunction against Mr. Coley and ECC, barring further unauthorized use of DIRECTV programming and equipment. *Id*. at *97-102.

DIRECTV then moved for summary judgment on damages. The District Court granted that motion as well. It found that Mr. Coley and ECC committed 2,393 separate violations of the Communications Act, 47 U.S.C. § 605, and DIRECTV requested an award of statutory damages available under § 605 at $1,000 per violation based on the 2,393 violations, avoiding a trial on economic damages. *See Sky Cable, LLC v. Coley*, No. 5:11cv00048, 2013 U.S. Dist. LEXIS 160571, at *3, n.2 (W.D. Va. Nov. 7, 2013). The District Court accordingly entered judgment for $2,393,000 against Mr. Coley and ECC, jointly and severally. *Sky Cable, LLC v. Coley*, No. 5:11cv00048, 2014 U.S. Dist. LEXIS 8689 (W.D. Va. Jan. 23, 2014) (the "Judgment"). It later awarded DIRECTV recovery of attorney fees and costs totaling $236,013.85 (the "Costs Order"). *Sky Cable, LLC v. Coley*, No. 5:11-cv-48, 2014 U.S. Dist. LEXIS 125134 (W.D. Va. Aug. 15, 2014). Coley and ECC did not appeal the Judgment or the Costs Order and both became final.

The Virginia Litigation saga did not end there as the case proceeded to the post-judgment collection phase. Discovery showed that Mr. Coley possessed few assets in his own name. He instead owned or controlled several North Carolina and Delaware limited liability companies, including but not limited to Its Thundertime, LLC, East Coast Sales, LLC, and South Raleigh Air, LLC (collectively, the "LLC's") to hold legal title to virtually all of his financially material

---

[12] "Randy Coley raises no argument concerning his personal liability and the court finds DIRECTV has established that Randy Coley is individually liable for the § 605 violation." *Sky Cable, LLC v. Coley*, No. 5:11cv00048, 2013 U.S. Dist. LEXIS 97129, at *67-68 (W.D. Va. July 11, 2013).

assets. *See Sky Cable, LLC v. Coley*, No. 5:11cv00048, 2016 U.S. Dist. LEXIS 93537, at \*29-36 (W.D. Va. July 18, 2016) (the "Post-Judgment Order").

DIRECTV filed a motion in the Virginia Litigation to subject all assets held by the LLC's to judgment execution. On July 18, 2016, the District Court issued an order granting that motion, finding that the LLC's were the alter egos of Mr. Coley. *Id*. The decision was reached on two separate grounds. The District Court first determined that "given the particular facts of this case … Delaware law would recognize the reverse veil-piercing theory and apply it here, finding that Randy Coley is the *alter ego* of his limited liability companies." *Id*. at \*58.  In addition, the District Court found that if reverse-piercing theory was not permitted under Delaware law, "justice would still require the court to apply such a theory in the instant case under its inherent sanction power." *Id*. at \*59. Mr. Coley's actions were found to be "utterly inconsistent with the orderly administration of justice" and Mr. Coley had "engaged in deception and utter disregard for the judicial process. . . . Randy Coley will go to any lengths to serve his interests to the detriment of opposing parties and contrary to the interests of justice." *Id*. at \*60-61.[13]

Mr. Coley, Kimberli Coley, Its Thundertime LLC, and South Raleigh Air LLC appealed the Virginia Litigation Post-Judgment Orders, and the various appeals were consolidated. The United States Court of Appeals for the Fourth Circuit affirmed the District Court's decisions in the Post-Judgment Orders on March 28, 2018, in *Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375 (4th Cir. 2018). A subsequent petition for rehearing *en banc* to the Fourth Circuit was denied. DIRECTV resumed its collection efforts.

---

[13] The District Court also ordered that Mr. Coley and his wife Kimberli Coley be equitably estopped from asserting that Mrs. Coley owned any interest in the LLC judgment debtors, noting that she surrendered any such interest under oath in the Virginia Litigation in order to obtain the filing of a stipulation of dismissal of all DIRECTV claims made against her personally. *Sky Cable, LLC v. Coley*, No. 5:11cv00048, 2013 U.S. Dist. LEXIS 97129 at \*51 (W.D. Va. July 11, 2013). An order for appointment of a receiver was also entered. *Id*. at \*64.

### 3.    Findings from the Bankruptcy Case and Trustee AP

After the *en banc* petition was denied, Mr. Coley filed his chapter 11 petition on April 30, 2018 (the "Petition Date"). On October 18, 2018, DIRECTV timely filed Claim No. 12 in the Bankruptcy Case in the amount of $2,710,063.57, the balance of the Judgment and Costs Order as of the Petition Date (the "Judgment Amount"). No objection to the DIRECTV claim has been filed to date.

The trustee filed the Trustee AP against Mr. Coley, Mrs. Coley, and Its Thundertime, LLC,[14] seeking to avoid the transfers of certain real estate in Wake and Warren Counties, North Carolina, from Its Thundertime to the Coleys pursuant to 11 U.S.C. § 544 and applicable state law. The matter was tried before this court over the course of two days (July 30 and 31, 2019). Mr. Coley fully participated in and testified at length at the trial. He was vigorously represented by able and competent counsel. This court has issued an opinion and judgment deciding that case, finding that Mr. Coley participated in and is liable for pre-petition fraudulent transfers of the subject real property in an attempt to shield those assets from execution on the DIRECTV Judgment. In the course of making that decision, and although the issues were different, this court -- independently of the District Court -- assessed the credibility of Mr. Coley's testimony concerning the holding of assets in the LLC's and found it wanting.[15]

---

[14]  Neither the LLC's nor Mrs. Coley have sought bankruptcy protection.

[15]  "[T]he trial of this adversary proceeding revealed the efforts of the Coleys to shield assets from creditors, particularly DIRECTV. The claim of DIRECTV arises from the multi-year resale of pirated satellite television programing that resulted in a $2,393,000 final and nonappealable judgment in the Virginia Litigation for what is, at its core, a claim for fraud and larceny. …. They have both again given sworn testimony they perceive to be currently advantageous, regardless of how tenuous a relationship their statements may have to the truth as established in the Virginia Litigation. Memorandum Opinion, Trustee AP Dkt. 51 at *31.

## LAW AND ANALYSIS

**A.    SUMMARY JUDGMENT**

### 1.    Legal Standard

A party is entitled to summary judgment if the undisputed facts established in the record "show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The court must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant . . . ." *Humboldt Express, Inc. v. The Wise Co. (In re Apex Express Corp.)*, 190 F.3d 624, 633 (4th Cir. 1999) (citations omitted). Any evidence in the record may be considered by the court if that evidence is stipulated, uncontested, or otherwise admissible at trial.  *See* Fed. R. Civ.  P. 56(c)(2).  The evidence need not be introduced in the form required at trial so long as "the substance or content of the evidence . . . [is] admissible . . . ." 11 James Wm. Moore et al., MOORE'S FEDERAL  PRACTICE, ¶ 56.91[2] (3d ed. 2017). If no objection is made, the court may consider a possible objection waived and consider the evidence. *See* Fed. R. Evid. 103(a).

The party seeking summary judgment has the initial burden of proving the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the initial burden is met, the opposing party must respond and show the existence of factual disputes sufficient to advance a genuine issue to trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The court can then decide if "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Consequently, if DIRECTV has met its burden, the Defendant must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita* 475 U.S. at 587. "Merely alleging the existence of a factual dispute is insufficient to defeat a summary judgment motion; rather there must exist in the record a genuine issue of material fact." *Anderson*, 477 U.S. at 247.

### 2.       Sufficiency of Response

Rule 56(c) provides that a party asserting that a fact is genuinely disputed must support the assertion by (1) citing to particular parts of the record or (2) showing that the cited materials do not establish the absence of a genuine dispute or that the moving party cannot produce admissible evidence to support the asserted facts. Here, Mr. Coley filed a nine-page Response seeking to establish genuine disputes of material fact necessary to defeat the Motion. No accompanying affidavits, declarations, references to past depositions, documents or other evidence were provided with it. Instead, the Response contains broad conclusory statements asserting that genuine issues of material and disputed facts are present. It contains adjectives and string citations to statutes primarily seeking to exclude the effect of facts and evidence from the Virginia Litigation on the question of intent. However, in the Response Mr. Coley offered no concrete evidence to counter DIRECTV's evidence, thereby failing to meet his burden under Rule 56. The rule "does not allow the mere existence of some alleged factual dispute between the parties to defeat a proper motion for summary judgment." *Holsey v. Ohio State Life Ins. Co.*, No. 93-2524, 1994 U.S. App. LEXIS 30442, at *4 (4th Cir. 1994) (internal citations omitted).

When the deficiency of the Response was pointed out in DIRECTV's Reply to the Response (AP Dkt. 24), Mr. Coley scrambled to submit a Supplement to the Response (AP Dkt. 26) consisting of a three-page, nineteen paragraph declaration under made under penalty of

perjury (AP Dkt. 24 at 2-5; the "Declaration"). The Supplement and Declaration are the subject of a Motion to Strike filed by DIRECTV. For the reasons stated in the Order Allowing Motion to Strike the Supplement and Declaration filed simultaneously herewith, the facts asserted by Mr. Coley in the Declaration cannot be considered in conjunction with the instant motion for summary judgment.[16]

In addition, in both the Response and the Declaration, Mr. Coley takes positions directly contrary to his prior sworn statements. "As a general rule, a party may not overcome a motion for summary judgment by submitting an affidavit that conflicts with earlier deposition testimony to create a material issue of fact." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact. . . . A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Id.* at 961 (internal citations omitted).

Thus, even if the Declaration is considered, neither it nor the Response properly challenge the Plaintiff's evidence submitted in its motion for summary judgment. Defendant consequently failed to meet his burden under Rule 56(c), and the factual assertions from the Virginia Litigation as contained in the Jamnback Declaration, as well as the record from the Bankruptcy Case and the Trustee AP, are accepted as true. The question then becomes whether those facts are sufficient to find that DIRECTV is entitled to judgment as a matter of law on any of its three legal theories for excepting its debt from discharge advocated in this case.

---

[16] In that order, the court also determined that even if considered, nothing in the Declaration would change the outcome of the summary judgment motion considered here. Mr. Coley's statements as contained in the Declaration either confirm an undisputed fact (Paragraphs 1-7), are irrelevant to the issues considered here (Paragraphs 9-12), or directly contradict the District Court's final and non-appealable findings in the Virginia Litigation (Paragraphs 8 and 13-19).

B.    **ISSUE PRECLUSION**

Independent of the inadequacy of the Response, in order to determine the sufficiency of DIRECTV's proffered evidence, the court must also address the preclusive effect, if any, of the findings in the Virginia Litigation, and whether the doctrines of collateral estoppel and res judicata bar the Defendant from relitigating the issues and defenses decided there.

The doctrine of collateral estoppel provides that "[o]nce an issue is actually and necessarily determined by a court of competent jurisdiction," the determination made by the prior court is "conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Freer et al. v. Weisnstein (In re Weinstein)*, 173 B.R. 258, 267 (Bankr. E.D.N.Y. 1994) (citing *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 973 (1979)). "Collateral estoppel principles apply to dischargeability proceedings under section 523(a) of the Bankruptcy Code." *Id.* (citing *Grogan v. Garner*, 498 U.S. 279, 284 n.11, 111 S. Ct. 654, 658 n.11 (1991). A four-part test determines if collateral estoppel is applicable: "(1) [t]he issue sought to be precluded must be the same as that involved in the prior action; (2) [t]he issue must have been actually litigated; (3) [i]t must have been determined by a valid final judgment; and (4) [t]he determination must have been essential to the prior judgment." *Weinstein*, 173 B.R. at 267.

Like collateral estoppel, res judicata is a "fundamental precept of common-law adjudication." *Montana*, 440 U.S. at 153.  "Res judicata ensures the finality of decisions." *Brown v. Felsen*, 442 U.S. 127, 131, 99 S. Ct. 2205, 2209 (1979).  "Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Id.* The doctrine "prevents all grounds for, or defenses to, recovery that were previously available

to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown*, 442 U.S. at 131; 99 S. Ct. at 2209.

Mr. Coley argues in the Response that the Virginia Litigation did not sufficiently decide the issue of his *intent* with respect to his diversion of satellite signals in the Massanutten Resort sufficient to invoke the doctrine of collateral estoppel with respect to any of the § 523 discharge exception claims made in this adversary proceeding. He argues that the District Court's discussion of intent with respect to providing unreported and unauthorized satellite television access to over two thousand customers from whom he collected was unnecessary in finding liability and awarding statutory damages of $1,000 per violation under the Communications Act and therefore carries less collateral estoppel weight.

This argument, however, ignores the simple fact that the District Court did consider and make findings on the question of intentional actions and knowing behavior in the course of assessing Mr. Coley's safe harbor defense (47 U.S.C. § 605(e)(3)(C)(iii)) asserted as an affirmative defense in the Virginia Litigation. In his sworn deposition, Mr. Coley acknowledged and admitted that he knew billings from DIRECTV were understated since at least 2004, but that he continued to collect fees generated by its programing from unauthorized subscribers without informing DIRECTV. His testimony concerning the underlying scheme "precludes any rational fact finder from concluding that he was not aware and had no reason to believe that his acts violated § 605(a)." *Sky Cable, LLC v. Coley*, 2014 U.S. Dist. LEXIS 8689, *5-6.  Thus, Mr. Coley raised and the District Court specially addressed the question of whether he intentionally downloaded, distributed, misappropriated and collected upon pirated satellite television signals to the detriment of DIRECTV. It found that Mr. Coley perpetuated this scheme "fully cognizant"

of the fact that he was authorized to provide DIRECTV programming to only 168 subscribers while providing it to over 2,000 end-users. *Id.*

Applying the four-part *Weinstein* test, the issue in this adversary proceeding is fundamentally the same as that involved in the prior action, namely, whether Mr. Coley knowingly pirated satellite television signal from DIRECTV and provided that programming to his subscribers without authorization. That issue was actually litigated and decided in the Virginia Litigation as reflected in the District Court's written opinions and its consideration of the safe harbor defense. The District Court's detailed findings in the final Judgment and associated orders (including the Post-Judgment Order upheld on appeal) concluded that Mr. Coley knew what he was doing and was personally liable for violating the Communications Act. Its determination that Mr. Coley at all pertinent times acted with the requisite intent and knowledge of his actions and its effect on DIRECTV was essential to the holding that he was liable for violations of the Communications Act.

Facts clearly established in the Virginia Litigation cannot now be brought back into controversy by Mr. Coley. The facts underlying the decisions and judgment in the Virginia Litigation resulted in final orders on both Mr. Coley's liability for violations of the Communications Act and resultant statutory damages. *See Sky Cable, LLC v. Coley*, No. 5:11cv00048, 2013 U.S. Dist. LEXIS 97129 (W.D. Va. July 11, 2013); *Sky Cable, LLC v. Coley*, No. 5:11cv00048, 2014 U.S. Dist. Lexis 8689, at *10-11 (W.D. Va. Jan. 23, 2014). Furthermore, nothing in the Response (and the Declaration were it to be considered) adequately distinguishes or challenges those findings.

## C.    CLAIMS FOR EXCEPTION TO DISCHARGE

Having found that Mr. Coley's intention to divert the DIRECTV signal and profit from it was established in the Virginia Litigation and remains binding here, the next question is the effect of that finding that on DIRECTV's request to except from discharge the Judgment Amount made on three Bankruptcy Code grounds: actual fraud [11 U.S.C. § 523(a)(2)(a)], larceny [11 U.S.C. § 523(a)(4)] and willful and malicious injury [11 U.S.C. § 523(a)(6)].

### 1.    Willful and Malicious Injury

The Plaintiff maintains that the findings by the District Court in the Virginia Litigation satisfy all elements § 523(a)(6), which excepts from discharge a debt for willful and malicious injury to another entity or to the property of another entity. As discussed in the collateral estoppel segment above, the District Court indeed found that Mr. Coley's actions were "intentional," and the Plaintiff's evidence here shows that the resultant injury to DIRECTV was reasonably foreseeable. Boiled to its essence, it is established for purposes of summary judgment that Mr. Coley knowingly took the property of another (satellite programing), sold it to 2,393 additional, unreported end-users, and kept nearly all (at least 93%) of the collected monthly payments. The "willfulness" element as contemplated in § 523(a)(6) is therefore determined without the need for renewed litigation. However, a willful act is only one side of the coin necessary to except a debt from discharge pursuant to § 523(a)(6), as an intent to act does not automatically connote malice.

In *Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998), the Supreme Court ruled that "willful" modifies the word "injury," meaning that "nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Id.* (emphasis in original.) An intentional act is not malicious

if the injury is "neither desired nor in fact anticipated by the debtor." *Id.* at 62, 118 S. Ct. 974. To qualify as malicious, the debtor must have acted with substantial certainty that harm would result or with a subjective motive to cause harm. *See In re Cobham*, 528 B.R. 283 (Bankr. E.D.N.C. 2015).

The Fourth Circuit recently considered the *Geiger* standard in *TKC Aerospace, Inc. v Muhs*, 923 F.3d 377 (4th Cir. 2019). For the malicious element to be determined by collateral estoppel from a prior proceeding,

> it is not enough to have "a deliberate or intentional *act* that leads to injury." *Geiger*, 523 U.S. at 61, 118 S. Ct. 974. Rather, a bankruptcy court must specifically find a deliberate and intentional *injury*. Therefore, even if TKCA is correct that the Alaska court decided Appellant intentionally and purposefully misappropriated TKCA's trade secrets, that is still not enough. It must have taken the additional step of finding that Appellant, in so doing, intended for TKCA to be injured by that misappropriation.

*Id.* at 388.

In the Virginia Litigation, the District Court found that a violation of 47 U.S.C. § 605(a) occurred when Mr. Coley built the Massanutten cable system and knowingly used it to divert (or "misappropriate") satellite programing on a large scale. Mr. Coley and ECC collected and paid DIRECTV for only 168 units while providing service for 2,561 units overall, a difference of 2,393 end-user units. He billed each of the units and by his own admission was aware that DIRECTV was not being paid for the diverted programing. Negligence or even recklessness was not at play; he knew what he was doing as his actions in billing and collecting from the extra customers were deliberate and calculated. The Communications Act provides that DIRECTV was entitled to elect statutory damages calculated on a per violation formula. Plaintiff states that it made the election to avoid needless further costs, which is reasonable, and that it did not seek a hearing on punitive damages for much the same reason. In the Virginia Litigation, neither

17

consideration of the safe harbor defense in the liability order nor the statutory damages order considered the question of maliciousness in causing injury, as that element was not necessary under relevant portions of the Communications Act [47 U.S.C. § 605(a) and(e)]. The District Court simply was not required to visit the issue of whether Mr. Coley "deliberately" intended to injure DIRECTV instead of just feathering his own nest at its expense.

Consequently, under *TKC Aerospace* and *Geiger*, this court finds the willfulness element to be satisfied, but not the malice element, which would require live testimony and evidence at trial. Consequently, summary judgment cannot be granted under 11 U.S.C. §§ 523(a)(6).

## 2.        Actual Fraud

Turning next to § 523(a)(2)(A), the Plaintiff contends that the diversion of satellite signals leading to the Judgment were obtained by "actual fraud" on the part of Mr. Coley. Here, nondischargeability of a claim based on actual fraud requires a five-element proof that: (1) the debtor made representations, (2) the debtor knew of the falsity of those representations, (3) the debtor acted with the intent to deceive, (4) the creditor relied on such representations, and (5) the creditor sustained damages as a result of the misrepresentations. *See e.g., In re Bebber*, 192 B.R. 120, 123 (W.D.N.C. 1995); *In re Simos*, 209 B.R. 188, 191 (Bankr. M.D.N.C. 1997).

As discussed, the Mr. Coley's intent to divert the signals and collect subscriber funds from third parties is established in the Virginia Litigation and binding here. That case also establishes that Mr. Coley made a deceitful false statement to DIRECTV in the form of omission by maintaining the 168-user subscriber agreement to download signals when the actual number of user units climbed to over 2,500 over the course of a decade. DIRECTV contends here that Mr. Coley's failure to update the reported number of users infers a misrepresentation by silence. Consistent with the District Court's findings, this court agrees that Mr. Coley had an affirmative duty to come forward when he knowingly diverted the signals and handsomely profited from the

extensive overuse. The first three elements of the actual fraud exception to discharge can therefore be met from the evidence at hand. The fifth element of damages is discerned at the $1,000 per violation statutory damages measure that yielded the $2.393 million Judgment in the Virginia Litigation before costs and fees.

However, as with the maliciousness element from § 523(a)(6), the advantages of taking the Communications Act per violation damages in the Virginia Litigation came at a cost. Even with the finding of intentional acts and misrepresentation by omission, DIRECTV must still prove an element necessary in this setting to establish nondischargeability for actual fraud, namely its continued reliance for over a decade on the representation of the limited 168-units use of the signal when the actual number crept into the thousands.

The Plaintiff maintains that reliance for purposes of this adversary proceeding can be inferred from the District Court's specific finding that:

> Coley admits that he reported to DIRECTV that 168 subscriber units at Massa-nutten would have access to DIRECTV programming, that he never paid DIRECTV for more than the 168 subscriber units originally reported, and that as of May 2011 he was providing DIRECTV programming to 2,353 subscriber units managed by GERM, among other areas of Massanutten, using programming obtained from the Massanutten DIRECTV SMATV account. The subscriber unit count on the Massanutten SMATV account remained at 168 units from 1999 through June 2011.

*Sky Cable*, 2013 U.S. Dist. LEXIS 97129, at *66-67.

However, while this finding from the Virginia Litigation summarizes the factual basis for meeting the first three elements of actual fraud, it is silent on reasonable reliance. Nothing in the District Court's orders and judgments addresses the reasonableness of reliance by DIRECTV on the Defendant's failure to update the subscriber agreement or otherwise notify it of the more than fourteen-fold increase because, as with the "malicious" element in the previous section, such a finding was not necessary under the Communications Act sections before it. Further evidence is

19

required to determine the reasonableness of reliance, and, if necessary, for the court to weigh the sufficiency and effect of any "badges of fraud" on reliance. Consequently, while the first three and fifth (damages) elements necessary for entry of summary judgment on actual fraud are met and would be binding if trial were to proceed, the fourth element (reliance) requires live testimony and other evidence to be presented at trial. Consequently, summary judgment is not appropriate on this count on § 523(a)(2).

### 3.    Larceny

The third basis alleged by the Plaintiff to except from discharge the DIRECTV claim is the larceny exception found in § 523(a)(4), which excepts a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The term "for fraud or defalcation while acting in a fiduciary capacity" does not qualify the "embezzlement, or larceny" categories. *See In re Booker*, 165 B.R. 164 (Bankr. M.D.N.C. 1994). Generally speaking, larceny is "the unlawful taking and carrying away of property of another with the intent to appropriate it to use inconsistent with the latter's rights." Black's Law Dictionary (5th ed. 1979).  More specifically, under federal common law larceny is defined as the "felonious taking of another's personal property with intent to convert it or deprive the owner of the same." *In re Langworthy,* 121 B.R. 903, 907-08 (Bankr. M.D. Fla. 1990). It differs from embezzlement by a requirement that the taking be unlawful. *See Bullock v. BankChampaign, N.A.*, __U.S.__, 133 S. Ct. 1754 (2013). The Plaintiff does not assert embezzlement in this action, but relies on larceny, contending that an "intentional misappropriation of DirecTV's satellite signals constitutes larceny under 11 U.S.C. § 523(a)(4) . . . ," citing *DirecTV, Inc. v. Karpinsky (In re Karpinsky)*, 328 B.R. 516, 527 (Bankr. E.D. Mich. 2005).

As discussed in the two sections above, the indisputable facts established in the prior litigation between the same parties show a multiple-years-long violation of the Communications Act by Mr. Coley through his knowing and intentional diversion of the DIRECTV satellite signal to the 2,393 additional end-users under a 168-permitted user license. He collected approximately $485,400 per year on the provided satellite programing while paying DIRECTV about $25,000 per year, for an annual gross profit of about $460,000. Mr. Coley is estopped from relitigating or arguing the issue of the intentionality or willfulness of his scheme and his continuous knowing violation of the Communications Act. In addition, res judicata bars Mr. Coley from asserting any defense to the issues with respect to his intent that was available to him at the time of the Virginia Litigation, regardless of whether or not he asserted those defenses at that time. *See Brown*, 442 U.S. at 131; 99 S. Ct. at 2209. Given those facts, the question here is whether the same intentional scheme found and established in the Virginia Litigation constitutes "larceny" as that term applies in § 523(a)(4).

The *Karpinsky* court considered a similar situation to the one before this court. In it, a debtor bought and distributed or held for sale at least seven signal-theft devices used or useable to pirate satellite TV signals from DIRECTV. Unlike the present situation, no prior trial had been held in a different court, so a trial was conducted by the bankruptcy court on the underlying violation of the Communications Act as well as the dischargeability of the claim. The bankruptcy judge found after trial clear violations of the Communications Act and imposed statutory damages of about $200,000 against the debtor. The defendant argued that the damages were dischargeable since signal theft is not a specific exception from discharge like damages from the crimes of impaired driving (§ 523(a)(13)) or criminal restitution (§ 523(a)(9)). The court rejected that position because pirating satellite signals fit a bill of particulars for larceny. The debtor

21

there, as with Mr. Coley here, intended to and did misappropriate the intangible property of another (DIRECTV in both cases) and profited hugely from that misappropriation to the detriment of the owner.

The only difference here is that the Virginia Litigation determined the underlying facts upon which summary judgment may be granted instead of requiring a trial. The District Court undoubtedly found that the actions of Mr. Coley amounted to theft, holding:

> the Coley defendants did not steal a satellite television signal for just one household. Rather, they transmitted pirated satellite television signals to 2,561 subscriber units.  Second, unlike [a] theft for personal use, the Coley defendants profited handsomely by collecting thousands of DIRECTV subscriber fees from the various Massanutten properties and remitting a miniscule fraction of those payments to DIRECTV. In short, the Coley defendants cannot pocket DIRECTV subscriber fees from 2,561 subscriber units, remit fees to DIRECTV for only 168 of these units, and suggest that their actions constitute only one violation. This is not a case . . . where the pirate stole one signal for his personal use. In this case, the Coley defendants profited by transmitting the stolen DIRECTV signal to thousands of units, and a violation took place each time the Coley defendants transmitted the DIRECTV satellite television signal to a person outside an authorized channel of transmission. While the Coley defendants paid for, and were authorized to transmit, the DIRECTV signal to 168 persons, they did not pay for, and were not authorized to transmit, the DIRECTV signal to the other 2,393 subscriber units.

*Sky Cable, LLC v. Coley*, No. 5:11cv00048, 2013 U.S. Dist. LEXIS 160571, at *22-24 (W.D. Va. Nov. 7, 2013).

The District Court's use of the verbs "steal" and "pirated" were not accidental as they describe exactly what Mr. Coley intended to do and accomplished for many years. His claims to the contrary, as attempted in the Response and Declaration here and stated in his testimony before this court at the trial of the Trustee AP, only exhibit Mr. Coley's perfidious blindness to the facts as determined in the Virginia Litigation.  This court is bound by those findings. By its nature, knowingly and secretly downloading a communications signal from the sky and surreptitiously re-selling it to third parties at a significant profit, while depriving the owner of the

value of the signal, is conversion and larceny. An election to measure damages at $1,000 per unit is immaterial to the question of intent to commit larceny.

## CONCLUSION

The Motion for Summary Judgment filed by DIRECTV is DENIED with respect to the claims brought pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(6); and ALLOWED with respect to the claim for exception from discharge pursuant to 11 U.S.C. § 523(a)(4). The entire balance of the Judgment from the Virginia Litigation as set forth in its filed claim, less any recovery received in the Bankruptcy Case or as may be amended by later valid objection, is excepted from any discharge received by Mr. Coley. Absent a further order, the automatic stay of 11 U.S.C. § 362(a) remains in effect and DIRECTV is not permitted to pursue collection of the Judgment balance independently of the Trustee while the Bankruptcy Case remains open. A separate judgment will be entered.

## END OF DOCUMENT